

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2005

# Morris v. Secretary Defense

Precedential or Non-Precedential: Precedential

Docket No. 04-1808

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Morris v. Secretary Defense" (2005). *2005 Decisions*. Paper 594.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/594

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 04-1808

WILLIAM D. MORRIS

v.

DONALD H. RUMSFELD,
SECRETARY OF DEFENSE,
Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 01-cv-01729
(Honorable Christopher C. Conner)

Argued May 9, 2005

Before: SLOVITER and FISHER, <u>Circuit</u> <u>Judges</u>,
and POLLAK,[*] <u>District</u> <u>Judge</u>.

*Honorable Louis H. Pollak, Senior District Judge for the
United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

(Filed  August 22, 2005)

PETER D. KEISLER
Assistant Attorney General

THOMAS A. MARINO
United States Attorney

MARLEIGH D. DOVER
JONATHAN H. LEVY (argued)
Attorneys, Appellate Staff
Civil Division, Room 7231
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

*Attorneys for Appellant*

RALPH B. PINSKEY (argued)
Pinskey & Foster
121 South Street
Harrisburg, PA 17101

*Attorney for Appellee*

---

OPINION OF THE COURT

---

POLLAK, District Judge:

This appeal arises out of efforts by appellee William D. Morris ("Morris"), a former employee of the federal Defense Logistics Agency ("DLA"), to recover damages for alleged disability discrimination in the workplace. Morris obtained a favorable award from the EEOC, after extensive administrative proceedings, but now seeks to recover increased compensatory damages in this federal action under 42 U.S.C. § 2000e-16(c). We must decide whether, in that context, the District Court may properly accept the EEOC's finding of liability as binding, while providing a *de novo* trial as to the amount of damages – that figure having been determined not by the EEOC, but by the DLA. For the reasons stated herein, we find such a partial *de novo* trial inappropriate.

I.

At the time this dispute arose, Morris worked for the DLA, an agency of the United States Department of Defense, as a warehouse fork-lift operator.[1] Morris is disabled due to arthritis, degenerative disc disease, and hypertension. In January and February of 1992, Morris gave the DLA letters from his doctor stating that Morris needed reasonable accommodation of his disability, and should be permanently reassigned to an office job. On February 27, 1992, a DLA

---

[1]The version of the facts recounted here is undisputed, for our purposes.

doctor confirmed this need for reassignment.

Despite the doctors' recommendations, Morris was not reassigned, but remained at work in his warehouse position. On April 11, 1992, he injured his back in the course of his duties there. Morris was unable to work or care for himself for roughly two months after the injury, and he continues to suffer from its effects.

Morris filed a complaint with the EEOC on August 25, 1992. On November 27, 1995, after a hearing, an Administrative Law Judge ("ALJ") at the EEOC issued a recommended decision. The ALJ found that Morris was a "qualified individual with a disability" and that the DLA had "intentionally discriminated" against him between February 27, 1992, and April 11, 1992, by failing, in spite of his repeated requests, to make any attempt to accommodate his medical restrictions. The ALJ found that the DLA had not discriminated against Morris after April 11, 1992. She recommended, among other remedies, that the DLA provide compensatory damages to Morris for his injury.

On February 5, 1996, the DLA issued a decision that rejected the ALJ's recommended finding of discrimination before April 11, 1992, but accepted her finding of no discrimination after that date. Morris appealed this finding of no discrimination to the EEOC.

In October 1998, the EEOC issued a decision restoring the ALJ's recommended finding that the DLA had discriminated against Morris between February 27 and April

-4-

11, 1992.  The EEOC awarded some relief directly, but remanded the matter to the DLA for a determination of the appropriate compensatory damages amount.  The DLA sought reconsideration of the EEOC's liability decision, which the EEOC denied in September 2000.

In June 2001, the DLA issued a decision awarding Morris compensatory damages of $12,500.00 for his April 1992 injury.  This decision could have been appealed either to the EEOC or to a federal district court.

Morris did not appeal the DLA's compensatory damages decision to the EEOC.  Instead, he filed this action in the Middle District of Pennsylvania, seeking a jury trial to determine the amount of compensatory damages that he should receive.  The DLA has paid the $12,500 that it determined was due to Morris, and complied with the other forms of relief awarded by the EEOC, but Morris seeks a higher damages award.

## II.

In the District Court, Morris moved for partial summary judgment as to liability, contending that the DLA was bound by the EEOC's finding of intentional discrimination.  The District Court granted Morris's motion on September 9, 2003, finding that because two separate administrative orders had been issued regarding Morris's claim – the EEOC determination of liability, and the DLA determination of damages – Morris could appeal the second, without permitting the court to re-examine the first.

On December 23, 2003, the District Court granted the DLA's motion to certify the summary judgment decision for interlocutory appeal. In March 2004 this court granted permission for the interlocutory appeal. We have jurisdiction under 28 U.S.C. § 1292(b).

III.

This appeal presents a question of first impression in this court: whether, when pursuing an employment discrimination claim in federal court, a federal employee may elect to enforce only the liability determination of an EEOC ruling, while seeking a *de novo* jury trial on the question of damages. In reviewing an interlocutory appeal under 28 U.S.C. § 1292(b), this court exercises plenary review over the question certified. *Pub. Interest Research Group of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1246 (3d Cir. 1995).

*A. The District Court's Decision*

As a federal employee, Morris brought his disability discrimination claim under the Rehabilitation Act, which provides federal employees protection from discrimination similar to that available to private sector employees under the Americans with Disabilities Act. *See* 29 U.S.C. § 791(g) (Rehabilitation Act anti-discrimination standard); 42 U.S.C. § 12112 (ADA standard).

Although the Rehabilitation Act provides essentially the same relief as the ADA, the administrative process is more complex under the Rehabilitation Act. *See* 29 C.F.R. §§

-6-

1614.101 *et seq.* A federal employee must first bring a claim of discrimination on grounds of disability to an internal complaints process within the employing agency. 29 C.F.R. § 1614.106. If dissatisfied with the agency's resolution, the employee may then bring the claim to the EEOC, which will investigate the claim, conduct a hearing if the employee so requests,[2] and issue a recommended decision. *Id.*; 29 C.F.R. § 1614.109. The agency then reviews the EEOC recommendation, and issues another decision. 29 C.F.R. § 1614.110. The employee may again appeal to the EEOC, as Morris did here. The EEOC's second decision may complete the administrative adjudicatory process, or may, as happened here, lead to remand of some aspect of the matter to the agency, so that the agency's decision on remand at last concludes the administrative adjudicatory process. *Id.*

On conclusion of the administrative proceeding, a district court may provide two distinct forms of relief. First, a federal employee who prevails in the administrative process may sue in federal court to enforce an administrative decision with which an agency has failed to comply. Such an enforcement action does not trigger *de novo* review of the merits of the employee's claims. *See, e.g.*, *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir. 1986); *Haskins v. U.S. Dep't of the Army*, 808 F.2d 1192, 1199 (6th Cir. 1987).

---

[2]Either *sua sponte* or at a party's request, the ALJ reviewing the claim may decline to conduct a hearing, or limit the hearing's scope, on finding that material facts are not in genuine dispute. 29 C.F.R. § 1614.109.

Alternatively, a federal employee unhappy with the administrative decision may bring his or her claims to a district court, under Section 505(a) of the Rehabilitation Act, 29 U.S.C. § 794a(a), and receive the same *de novo* consideration that a private sector employee enjoys in a Title VII action, under 42 U.S.C. § 2000e-16(c).[3] *Chandler v. Roudebush*, 425 U.S. 840, 863 (1976) (finding that 42 U.S.C. § 2000e-16(c) provides a trial *de novo*).

As the District Court recognized, this case does not involve an enforcement action.[4] Rather, the basis for Morris's claims is 42 U.S.C. § 2000e-16(c)'s provision for *de novo*

_____

[3]The precise language of Section 505(a) of the Rehabilitation Act reads, in relevant part, as follows:

> [T]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) . . . shall be available, with respect to any complaint under section 791 of this title [for disability discrimination], to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint.

29 U.S.C. § 794a(a)(1).

[4]As it is undisputed that the DLA has paid the entire amount of compensatory damages awarded to Morris in the administrative process, as well as providing the other relief awarded, there is nothing left for the District Court to enforce.

consideration of discrimination claims in the federal courts,[5] as it applies to disability discrimination claims under Section 505(a) of the Rehabilitation Act. Citing *Black's Law Dictionary*, the District Court observed that as a general matter *de novo* consideration means "a new trial on the entire case - that is, on both questions of fact and issues of law - conducted as if there had been no trial in the first instance," noting that "[s]everal federal courts have determined that a plaintiff who seeks *de novo* review of a damage award must also re-litigate the merits of the underlying discrimination claim." However, the District Court decided to "limit its *de novo* review . . . to the issue of compensatory damages," because the EEOC finding of liability and the DLA compensatory damages award had been issued in separate administrative decisions. The District Court based its approach on the route followed by the district court in *Malcolm v. Reno*, 129 F. Supp. 2d 1 (D.D.C. 2000). In that case, plaintiff Malcolm had claimed disability discrimination after the FBI retracted a job offer on discovering that he had chronic lymphocytic leukemia. *Id.* at 2. As in this case, the administrative decision of Malcolm's claim was made in two parts: an administrative determination of liability and some remedies, which Malcolm did not appeal, followed by a

---

[5]The statute itself does not specify the scope of the district court's inquiry, stating only that an aggrieved employee "may file a civil action as provided in section 2000e-5 of this title." 42 U.S.C. § 2000e-16(c). *Chandler* established that this provision should be viewed as creating a right to *de novo* consideration of the employee's claims. *Chandler*, 425 U.S. at 863.

-9-

decision on compensatory damages, which he sought to challenge in the district court without upsetting the earlier liability ruling. Malcolm also sought to enforce the earlier administrative ruling's requirement that he be allowed to participate in the next scheduled session of special agent training.[6] The FBI had refused to comply with this requirement.

The *Malcolm* court granted Malcolm's motion for a declaratory judgment that he need not re-litigate liability. The court also granted his request for immediate injunctive relief to enforce the administrative award of remedies, requiring the FBI to permit him to participate in the next scheduled session of the special agent training program.[7]

---

[6]Malcolm had requested immediate relief because no other training sessions were scheduled before his 37th birthday. Under FBI rules, Malcolm would be ineligible to begin the training after that date.

[7]Although the District Court here did not discuss it, Malcolm's declaratory relief – which declared that the administrative finding of liability was binding on the FBI, despite Malcolm's *de novo* suit for increased damages – was short-lived. The *Malcolm* court amended its order less than a week after it was issued, and vacated the declaratory relief, after concluding "that it was premature in the context of granting the plaintiff's motion for a preliminary injunction to also grant the plaintiff's requested declaratory relief and order the defendant to comply with the May 3, 1999 decision [that contained the administrative finding of disability]." *Malcolm*,

-10-

Relying on *Malcolm*, the District Court found in the case at bar that "[s]eeking *de novo* review of the June 11, 2001 final agency decision [by the DLA] does not place the EEOC's discrimination determination at risk of *de novo* review."

*B. The Scope of Trial Under 42 U.S.C. § 2000e-16(c)*

The language of the statutory provision – 42 U.S.C. § 2000e-16(c) – that provides the foundation for Morris's suit is in some tension with the District Court's approach. Section 2000e-16(c) allows an employee in Morris's position to "file a civil action as provided in section 2000e-5,"[8] governed, according to 42 U.S.C. § 2000e-16(d), by "[t]he provisions of section 2000e-5(f) through (k) of this title, as applicable." Morris's suit is thus subject to 42 U.S.C. § 2000e-5(g), which

---

129 F. Supp. 2d at 11.

[8]More fully, 42 U.S.C. § 2000e-16(c) provides as follows:

> [Subject to certain time limitations,] an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

authorizes a federal court to provide a remedy "[i]f the court finds" that discrimination occurred. This language appears to contemplate that a judicial remedy must depend on judicial – not administrative – findings of discrimination, and no other statutory language suggests that this requirement should change if a claimant does in fact present an administrative finding of liability to the court.

The relevant case law is not monolithic. But we find that the cases that have analyzed the issues in greatest depth have come to conclusions harmonious with what seems the clear import of the statutory language. We turn now to the case law.

Federal courts try plaintiffs' claims *de novo* in actions under 42 U.S.C. § 2000e-16(c). *Chandler*, 425 U.S. at 863. Trial *de novo* means trial "as if no trial had been had in the first instance," and requires an independent judicial determination of the issues in the case. *See Timmons v. White*, 314 F.3d 1229 (10th Cir. 2003) (collecting cases, and citing *Black's Law Dictionary*). Thus, it would seem that a *de novo* trial under 42 U.S.C. § 2000e-16(c) requires the court to decide the issues essential to the plaintiff's claims, including liability, without deferring to any prior administrative adjudication.

Although the Supreme Court has not directly addressed the precise issue before us, dictum of the Court in *Chandler* clearly implies that agency findings, while pertinent for a reviewing court, are not to be regarded as binding on the court. In the course of its analysis, the Court observed that

-12-

"[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo." *Chandler*, 425 U.S. at 863 n.39. If agency decisions were intended to have any binding effect, the Court's observation would have been superfluous.

Two courts of appeals have taken this view of the statute and of *Chandler* in cases presenting the same question we consider here.[9] In *Timmons*, the Tenth Circuit reviewed the case of a plaintiff who claimed disability and age discrimination after his temporary appointment at an Oklahoma ammunition plant was not renewed. *Timmons*, 314 F.3d at 1230-31. The employing agency eventually complied in full with the relief ordered by the EEOC, but Timmons remained dissatisfied with that relief. *Id.* at 1231. Reviewing the district court's grant of summary judgment to the government, the Tenth Circuit found that fragmented review

---

[9]In circuits in which courts of appeals have not yet spoken, the prevailing trend among the district courts, too, is to refuse to allow fragmented review of the type Morris seeks here. *See, e.g.*, *John v. Potter*, 299 F. Supp. 2d 125 (E.D.N.Y. 2004); *Simpkins v. Runyon*, 5 F. Supp. 2d 1347, 1351 (N.D. Ga. 1998). Two decisions from courts within this circuit are in this group. *Ritchie v. Henderson*, 161 F. Supp. 2d 437 (E.D. Pa. 2001); *Cocciardi v. Russo*, 721 F. Supp. 735, 738 (E.D. Pa. 1989).

-13-

was not available.[10]  *Id.* at 1233.  Addressing the differing conclusions reached by other courts that had already confronted the issue, the Tenth Circuit concluded that "the better-reasoned cases hold that a plaintiff seeking relief under § 2000e-16(c) is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the government on the issues resolved in his or her favor."  *Id.* at 1233.  Very recently, the D.C. Circuit reached the same result in *Scott v. Johanns*, 409 F.3d 466 (D.C. Cir. 2005).  Like *Timmons*, the *Scott* court held as follows:

> Under Title VII, federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying de novo both liability and remedy.  They may not, however, seek de novo review of just the remedial award.

*Id.* at 471-72.

*Timmons* and *Scott* built on earlier decisions that had hinted at the same result, in contexts that did not demand a direct resolution of the issue.  In *Moore v. Devine*, 780 F.2d 1559, 1564 (11th Cir. 1986), the Eleventh Circuit had

---

[10]The court also found, as an initial matter, that Timmons's action was properly characterized as a civil action under 42 U.S.C. § 2000e-16(c), not an enforcement action. *Id.* at 1232.  To the extent that Morris attempts to characterize his federal action as an enforcement action, we follow *Timmons* in finding this unpersuasive.

-14-

distinguished between enforcement and *de novo* actions, finding that when a plaintiff "proceeds to trial *de novo* on the very claims resolved by the EEOC, he or she cannot complain when the district court independently resolves the claims on the merits." *Id.* Likewise, in another early case, *Haskins v. Department of the Army*, 808 F.2d 1192 (6th Cir. 1987), which involved an enforcement action, the Sixth Circuit noted that where an employee seeks a *de novo* trial of discrimination claims, "the district court is not bound by the administrative findings." *Id.* at 1199 n.4.

A few decisions by other courts, led by *Pecker v. Heckler*, 801 F.2d 709 (4th Cir. 1986), have relied on *Moore* and *Haskins* to endorse limited review in *de novo* actions under 42 U.S.C. § 2000e-16(c). We find those decisions unpersuasive, however, because they appear not to have distinguished between enforcement actions (which do not provide *de novo* review) and *de novo* actions under § 2000e-16(c).[11]

---

[11]In *Pecker*, the Fourth Circuit cited *Moore* in a footnote stating, without qualification, that "the defendants are bound by the EEOC's findings of discrimination and retaliation," and that the plaintiff was therefore entitled to an order from the district court affirming the EEOC's liability ruling. *Pecker*, 801 F.2d at 711 n.3. However, the portion of *Moore* that *Pecker* cites refers to enforcement suits: it states that federal law "require[s] that the district courts *enforce* final EEOC decisions favorable to federal employees when requested to do so." *See Pecker*, 801 F.2d at 711 n.3 (emphasis added). Also, in *Pecker*, "[l]iability was not

-15-

Although it does not lead us to a different result, this case presents one small complication not addressed by the other courts of appeals. Morris argues that because the liability ruling and the compensatory damages ruling in his case were made in two separate decisions, he is entitled to enforce the liability ruling while challenging the compensatory damages ruling. All of the decisions discussed above that reject "limited *de novo*" trials are logically incompatible with this position, since they propose judicial

_____

contested in the district court," *id.* at 710, which may help explain the court's reluctance to allow the government to contest liability on appeal.

Another Fourth Circuit panel followed *Pecker*'s lead in *Morris v. Rice*, 985 F.2d 143 (4th Cir. 1993). *Morris* expressly found, citing *Haskins* and *Moore*, that "the plaintiff may limit and tailor his request for *de novo* review, raising questions about the remedy without exposing himself to a *de novo* review of a finding of discrimination." *Id.* at 145. However, neither *Haskins* nor *Moore* supports such a broad right.

Similarly, in dictum, the Ninth Circuit has cited *Haskins* and other cases as allowing partial *de novo* review, with apparent approval. *Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995). However, *Girard* offers no analysis, and appears to be in some tension with other Ninth Circuit precedent. *See Plummer v. Western Int'l Hotels Co., Inc.*, 656 F.2d 502 (9th Cir. 1981) (holding that in a *private* employee's Title VII action, administrative findings were not binding in a trial *de novo*); *cf. Williams v. Herman*, 129 F. Supp. 2d 1281, 1284 (E.D. Cal. 2001).

-16-

review entirely independent of the administrative proceedings. However, one district court case, *John v. Potter*, 299 F. Supp. 2d 125 (E.D.N.Y. 2004), is of particular interest in light of Morris's argument. *John* applied the *Timmons* approach to a situation that, like this one, clearly involved separate administrative decisions addressing liability and damages.[12] Because, under 42 U.S.C. § 2000e-16(c), a federal court must conduct a *de novo* trial of a plaintiff's claims – rather than an appellate review of a particular administrative result – we, like the *John* court, find it immaterial whether any prior administrative proceedings resulted in multiple decisions, or only one.

## IV.

We hold that, when a federal employee comes to court to challenge, in whole or in part, the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo*, and is not bound by the results of the administrative process, whether that process culminated in one administrative decision, or in two or more decisions. Therefore, we will reverse the District Court's grant of partial summary judgment, and remand the case for further

---

[12]Of course, even where the published decisions do not make it crystal clear, other cases may also have involved multiple decisions, given the back-and-forth between agencies inherent in the Rehabilitation Act administrative process. *See Ritchie v. Henderson*, 161 F. Supp. 2d 437, 441-42 (E.D. Pa. 2001) (outlining administrative process involving several rounds of rulings).

proceedings consistent with this opinion.